IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DAVID P. KEVER,

       Petitioner,

v.                                                      CASE NO. 1:03-cv-00114-MP-AK

JAMES MCDONOUGH,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 46, Amended Petition for Writ of Habeas Corpus,

by David P. Kever.  Respondent has filed a response with exhibits, Docs. 48 & 49, and Petitioner

has filed a reply.  Doc. 88.  This cause is therefore in a posture for decision.  Having carefully

considered the matter, the Court recommends that the petition be denied on all grounds.

## BACKGROUND

The petitioner, David Kever, was charged in Gilchrist County, Florida, in three separate

actions with various sexual crimes against a mentally defective minor.  More specifically, in

Cause Number 94-80, Petitioner was charged with three counts of sexual battery upon a mentally

defective minor and two counts of lewd or lascivious assault on a minor.  Doc. 49, Ex. A.  In

Cause Number 94-128, he was charged with one count of sexual battery upon a mentally

defective minor and two counts of lewd or lascivious assault on a minor.  *Id.*[1]  Finally, in Cause

Number 94-129, Petitioner was charged with two counts of sexual battery upon a mentally

defective minor and two counts of lewd or lascivious assault on a minor.  *Id.*  All allegations

involved the same child and allegedly occurred during the same time period.

In January, 1995, Petitioner filed a *pro se* motion for speedy trial, advising the court that

he had not waived his right to a speedy trial and "was never consulted by ex-attorney C.

DeThomasis about extending the time limits for his trial...."  Doc. 49, Ex. B.  At some point, Mr.

DeThomasis, who had been retained, was relieved of his duties.  *See* Doc. 49, Ex. CC at 15.

Petitioner then filed several motions *pro se*, including a motion for a bill of particulars

requesting "specific dates and places where these offenses are said to have occurred."  Doc. 49,

Ex. BB.   On February 9, 1995, the court conducted a *Faretta* hearing to determine whether

Petitioner was qualified to represent himself.  Doc. 66; *see also Faretta v. California*, 422 U.S.

806 (1975) (defendant in state criminal trial has constitutional right to represent himself when he

voluntarily and intelligently elects to do so); *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir.

2002) (failure to hold *Faretta* hearing is not error as matter of law; if trial record shows

defendant knowingly and voluntarily elected to represent himself, *Faretta* standard is satisfied);

*Hardwick v. State*, 521 So.2d 1071, 1074 (Fla. 1988) (court commits reversible error if it fails to

determine whether accused knowingly and intelligently waives right to court-appointed counsel).

At the conclusion of the hearing, which lasted almost an hour, the court found:

---

[1]This exhibit is missing the second page of the charges in Cause Number 94-128, but the
gist of the charges is clear.

It is my opinion that the defendant is verbal, is fluent, is capable of understanding complex concepts and applying them to factual applications and to make determined and resolved decisions.

I believe that he has a sufficient understanding and appreciation of the limitations that he will have by virtue of his lack of formal training in the law, lack of trial advocacy and trial experience; that he appreciates those situations.

I have acquainted him, and I understand that he is acquainted with the perils of self-representation. And I am sufficiently satisfied that he is aware of the benefits that may accrue by being represented by counsel and he knowingly rejects those.

That he is going to be held to the same standard of accountability, both as to rules of evidence, law and procedure. That he will be representing himself.

I believe that based upon his age; his education; his 40 years of life experience; after completion of a portion of high school, his observations in taking additional class work; the fact that he has operated a sole business where he was the sole proprietor and has built and conducted it and supported himself in a reasonable fashion; that he's participated in some minor civil litigation in small claims court.

That he's had an opportunity to discuss this case with predecessor counsel. That he's had an opportunity to review the legal resources available at the detention center. That he has had the benefit of inquiry of Mr. Galligani, a representative of the Public Defender's Office, who has been assisting him.

And I'm satisfied therein that the defendant is informed of the benefits of legal representation, the perils of self-representation, the seriousness of the instant charge, and that he appears to be of referenced age and in full control of his metal faculties.

That he has demonstrated both mental competency and both ability and is able to appreciate and understand the issues that are at trial in this case. And that he is making a knowing, voluntary, and sole decision to give up legal representation and to proceed to represent himself.

That he is in control of the decision-making process in this case and is willing to and has avowed that he will accept the consequences and the responsibility of such an action will undertake.

And for the colloquy on the record and my findings with regard to his appreciation, I deem him to be able to represent himself in this matter.

Doc. 49, Ex. CC at 4-6.  The court nevertheless appointed Dean Galigani, to "serve as standby counsel, to answer such direct inquiry as may be [posited] to [him] during the course of the trial proper."  *Id*. at 6.

The court then addressed Petitioner's outstanding motions.  As to the motion for bill of particulars, the court denied the motion as to Cause Number 94-80 "[s]ince the Information on its face tracks the appropriate statutes."  *Id*. at 11.  As to the other two cases, the court advised Petitioner:  "When you have done your depositions, if you then want to re-raise the motion for particulars, if the depositions are not adequate to point it out, you can renew those motions."  *Id*. at 27.  He did not thereafter renew the motion.

During the hearing, Petitioner demanded that trial proceed as scheduled although the court repeatedly advised him that it would give him "all the time" he needed to prepare his case.  *See*, *e.g*., *id*. at 15.  At that time, the State became concerned that Petitioner did not understand that because there had been no motion to consolidate the three cases, it intended "to proceed with the oldest of the three cases" first and that regardless of the outcome in that case, the State would seek Petitioner's continued incarceration "pending the trials of the other two cases."  *Id*. at 16. The court therefore questioned Petitioner:

| | |
|---|---|
| THE COURT: | Do you understand that you have three separate trials? |
| THE DEFENDANT: | Yeah.  I would like to have all three trials...all at the same time.... |

* * *

| | |
|---|---|
| THE COURT: | The difficulty with trying three trials all at the same time...is on this short notice there's no way that I can bring in a sufficiently large enough venire out of which I can draw three separate juries.... |

> Are you asking that I consolidate all of these cases into one
> file and try all of these charges before the same six jurors?

THE DEFENDANT:  Yes, Your Honor.

*Id*. at 16-17.  The State objected, and Petitioner reminded the court that several weeks earlier he

had announced his readiness for trial in all three cases.  *Id*. at 17; *see also* Doc. 49, Ex. B.  The

court denied consolidation.  *Id*. at 18.

On February 16, 1995, the parties appeared for trial on Cause Number 94-80 with

Petitioner acting as his own counsel and Mr. Galigani acting as stand-by counsel.  Doc. 61 at 2.

After disposing of some preliminary matters,[2] the court and Petitioner engaged in the following

exchange:

> THE COURT:          Mr. Kever, you have asked this court to recognize you as a
> person who is competent to represent yourself....I have
> done that...after having done a [*Faretta*] hearing and
> making the prerequisite findings of fact.
>
> We have now engaged in a series of motions and I have
> ruled on those motions, some of which have been filed at
> different points in time, some in fact after jury selection
> and just prior to the presentation of the evidence phase.
>
>                             * * *
>
> I again, in a sense of fairness and an interest in having a
> proper result in the case, offer you the opportunity, if you
> wish, to discontinue representing yourself and to have an
> attorney appointed, most like Mr. Galigani, to assist you in
> the defense of this case.  Even at this late hour if you wish
> to take advantage of counsel, I'll give you an opportunity

---

[2]The court was advised that Petitioner and counsel for the State had spoken with the
school psychologist, Helen Ricketson, that morning, and that Petitioner had taken the
opportunity to consult with Mr. Galigani "about certain questions he wanted to pose to [her]."
Doc. 61 at 2.  The court also advised the witnesses regarding sequestration .  *Id*. at 2-6.

|  |  |
|---|---|
|  | to withdraw your request for self-representation and have counsel appointed to assist you at trial. |
| MR. KEVER: | Could I ask if I would be allowed to do the cross-examination?  Have you ruled on that, sir? |
| THE COURT: | I will not be able to rule on that issue until I actually hear the testimony of the children.  I have to tell you that there is in the record strong reason to believe that the young lady, at least, will suffer serious and specific consequences if she is required to speak directly to you or to respond to you as an individual. |
|  | Now, I have not seen her so I have not made an independent assessment of her, which I will during the course of the direct examination.  I have to tell you, though, that there is a strong inclination, at least from what I've heard from the professional testimony of the expert and from what I understand from what I've seen in past situations, that there may well be a problem and I may not be able to allow you to cross-examine her. |

* * *

|  |  |
|---|---|
| MR. KEVER: | Even if I sit over here in a quiet manner? |
| THE COURT: | Well, I don't think it's a matter of the quiet manner; I think the difficulty is you being who you are.  I have never heard a suggestion in anything in this case that you are a violent, forceful, intimidating person, so I don't think that's the issue.  I think the issue is how the child responds to having to talk to you specifically and to discuss with you specifically the events that may or may not have occurred on that date.  That's the difficulty. |
| MR. KEVER: | But the record shows that...I have never bothered her.  She never left upset or anything else. |

* * *

|  |  |
|---|---|
| THE COURT: | I don't know what is going to come out during the course of the trial testimony....All that I can tell you is that as a result of the focus of the child on this incident, and in the |

course of her medical treatment, and the changes in behavior that the physician has documented and reported, are significant and they are important considerations that I must be aware of.

* * *

I would have to say there is a good likelihood that unless I see something that shows a strong, confident, assertive young lady who is in command of herself and her environment–but if I'm talking about a child of barely sixteen with a mental age of less than seven, from what I hear from the doctor, I can't tell you that I'm gong to see that.  That's why I cannot tell you that I would let you do it.  But I really can't rule on it today.  It's a risk, but I would have to say, if I were a gambling man, it's not likely.

MR. KEVER:          The main reason...I wanted to act as my own attorney was to be able to talk directly to [the victim and her brother]....

THE COURT:          Mr. Kever, you need to understand...I don't dislike you....I have tried to caution you from the very beginning that these are complicated cases not because they're so difficult, but it's difficult for you to be all things in the course of a case because it's so personal between you–and we're talking about a child.  We're not talking about an adult.

* * *

[T]here's a whole special body of law that deals with child victims.  And you not only have a child victim, you have a child victim with a mental handicap.  And the potential for manipulation, for intimidation, for response, for fear, for regression...are all present in a child witness to a greater degree than to an adult....I know what you want to do, but unfortunately you may not be able to do it....And I tried to caution you certainly during the [*Faretta*] hearing, and we tried to mention to you in the hearing you did with Mr. DeThomasis when he tried to explain to you why he postponed the direct interaction with the child and the family to the very end, because the consequences of that interaction–there are reasons why things occur, especially in child cases, that are difficult to simply say to you when

you read the black letter of the law....

You appear to be bright, you've done good work so far, but a lot of the tings you've attempted to do...I haven't been able to grant them partly because of the timing, partly because of the need to try it at this time....

But, again, I have to say to you it is a decision that only you can make.  If you would like a moment to discuss it with Mr. Galigani so you'll have the best opportunity to make a decision, I'll respect that and give you an opportunity to do that.

MR. KEVER:   Yes, sir.  Even if I stipulate that I won't–that I'll let you do–

THE COURT:   It's not you....If I thought for a moment that you were going to be a bad guy...I could gag you, I could chain you, I could haul you out of the courtroom...and just televise in and let you talk to him on the phone.

You're not my problem, your behavior is not my problem....I have the obligation to protect that child if the facts warrant it.

* * *

And that's the balance that the state was positing.  And if I can let you get out the information without harm to the child, I have an obligation to do that.  I can certainly do that with Mr. Galigani questioning.  But my comment to you is if Mr. Galigani is going to question, he can only ask your questions.  But if he were working with you on the case he might be able to make suggestions to you that he can't make now because he's not your attorney....

* * *

Why don't you take a moment and talk to Mr. Galigani and then let me know your thoughts on the matter, okay?

MR. KEVER:   What can he–

| | |
|---|---|
| THE COURT: | He can tell you– |
| MR. KEVER: | See, I already wrote out my opening statement and all this. I don't know how he could...in this quick time be prepared....I can understand why you're protecting me and– |
| THE COURT: | Well, why don't you talk to him and see what his recommendations would be and what he thinks–what he would do if you asked him to take over the case and...we'll see where we would...end up.... |

Doc. 61 at 8-17.

After a recess, the court continued:

| | |
|---|---|
| THE COURT: | I gave you an opportunity in light of what I saw as developments in the course of this case, the fact that the three cases were not consolidated, that you could expect to be housed in the county jail even if you were to prevail in this particular trial for another perhaps sixty to ninety days...the fact that there...are motions to depose in the other cases...that would give you a preparation different in kind and extent than in this case, the fact that I now have had the testimony from the child's physician that is–got a motion pending that may not allow you to do some of the things you had wanted to do in the course of the representation, I felt that that might affect your decision and you ought to have the opportunity...to...see if you were accomplishing what it was you hoped to accomplish by self-representation, and I gave you an opportunity to consult with Mr. Galigani just so you'd have the benefit of his experience in making your decision.  Have you had a chance to talk to him, sir? |
| MR. KEVER: | Yes, sir. |
| THE COURT: | I noticed you also talked to some of your family members....[H]ave you made a decision, sir? |
| MR. KEVER: | Yes, sir, I would like Mr. Galigani appointed to help me. |

*Id*. at 18-19.  The court then placed Petitioner under oath, and questioned him and his attorney as

follows:

| | |
|---|---|
| THE COURT: | You are advising me today that you wish to withdraw from self-representation and have the Office of the Public Defender appointed to assist you in this case? |
| MR. KEVER: | Yes, sir. |

* * *

| | |
|---|---|
| THE COURT: | Do you understand, sir, that they will probably be filing motions in this case and want to do discovery...and they're going to need your cooperation in preparing the case for trial? |
| MR. KEVER: | Yes, sir, we discussed it in a meeting in the cell here. |
| THE COURT: | All right. |

* * *

| | |
|---|---|
| MR. GALIGANI: | If the court appointed me to represent Mr. Kever I would move for a continuance probably until April....I would probably move obviously to consolidate the three cases.... |
| | I need to explain to Mr. Kever that any claims he had, whether valid or not, concerning the right to a speedy trial without demand will be waived by asking for a continuance here today on all three cases. |
| MR. KEVER: | I understand. |
| THE COURT: | Mr. Kever, I just wanted to make sure that you understood that if I appointed Mr. Galigani as trial counsel there are certain decisions that are properly his to make...and there are some that are your decisions to be made.  And I wanted to make sure that you understood if I appointed him today that this case probably would not go to trial today; it would be continued.... |
| MR. KEVER: | Yes, sir, Mr. Galigani explained that. |
| MR. GALIGANI: | We...went over that if I was to represent Mr. Kever he |

understands that this won't be a joint representation; that I will make all decisions that are within his purview–make him aware of those decisions, and he will make those decisions.  But concerning strategy and tactics and questioning, he understands that that will be my obligation.

Is that right, Mr. Kever?

MR. KEVER:          Yes, sir.

THE COURT:          All right.  And you've had a chance to talk to Mr. Galigani and you've also spoken with your family members as well?

MR. KEVER:          Yes, sir.

* * *

MR. BROWNING:    [W]e're not opposed to Mr. Galigani obviously representing Mr. Kever.

* * *

[W]e're not opposed to the continuance, however, we would request that we keep this jury that we have already impaneled....

* * *

THE COURT:          Folks, the panel has not been sworn...[T]o ask these folks to continue to be willing to serve for perhaps as long a period...as two months seems to be a burden I'm not inclined to impose on them.  I'm satisfied that...we can find another jury to try this case.

Note, Mr. Kever, though, that if I dismiss this [jury], since I've not sworn them, and I'm doing this at your request, that no jeopardy would attach and I would bring in another jury and proceed.

*Id*. at 19-24.  The court then found Petitioner's decision to withdraw from further representation

of himself and to have the Public Defender represent him to be a "knowing, voluntary,

intelligent, and indeed advised decision." *Id*. at 24.  Mr. Galigani formally moved for a

continuance, and the court questioned Petitioner regarding his acquiescence "in the decision then

for a continuance in this case." *Id*. at 25-26.  Petitioner expressed his agreement to the

continuance, and the court found:  "I recognize Mr. Galigani as counsel of record at this point,

and I will grant your ore tenus motion for continuance, noting on the record that Mr. Kever has

joined in that request expressly knowing that entitlements to speedy trial have been waived." *Id*.

at 26-27.  Out of the presence of Petitioner, the court brought the jury back into the courtroom

and explained to them what had transpired and his reasons for releasing them, *id*. at 28-41,

specifically noting, "You have not been sworn so jeopardy has not attached.  Those procedural

issues have been waived by the request for continuance." *Id*. at 38.

On May 23, 1995, Mr. Galigani, filed a motion for continuance in all three cases based

on counsel's inability to secure the attendance of the attending emergency room physician at a

deposition and to obtain copies of the alleged victim's deposition.  Doc. 49, Ex. C.

The cases were eventually consolidated, Doc. 49, Ex. F, with trial commencing on

February 28, 1996.  Doc. 49, Ex. D.  Petitioner's trial attorney was James T. Reich.  *Id*.

Almost immediately after the victim took the stand, counsel for Petitioner asked that her

testimony "be put in time perspective [as to] [t]he day it happened." *Id*. at 220.  Counsel stated

that the "allegations in this case are general in nature, with similar conduct being alleged over,

within a week's period of time." *Id*. at 221.  He pointed out to the court that Petitioner's *pro se*

motion for bill of particulars had been denied and argued that in deciding "whether or not a

count has been proved," the court needed "some time periods." *Id*.  Otherwise, "to allow [the

victim] to go into it, without establishing those time periods, certainly prejudices the defendant

from...any kind of defense." *Id*.  In response, the State explained that Petitioner "had the opportunity to take depositions.  He had the police reports that delineate all the charges and where they specifically arose from," and argued that it would "tie it together."  *Id*. at 221-222. The court agreed that the State could "present [its] cases the way [it] want[s] to do it.  However, if it's deficient, there may be grounds for later motions at a later time."  *Id*. at 222.

At the conclusion of the State's case, defense counsel moved for judgment of acquittal on all of the sexual battery counts on the ground that the State had failed to present sufficient evidence that the alleged victim was mentally defective within the meaning of the statute.  *Id*. at 505-512.  The court denied the motion.  *Id*. at 512.  It did, however, dismiss Count Three in 94-128 and Counts Two and Four in 94-129, *id*. at 513-14, and the State voluntarily reduced one count in 94-129 to attempted sexual battery.  *Id*. at 537.

In Cause Number 94-80, the jury found Petitioner guilty of one count of sexual battery on a mentally defective person and two counts of lewd and lascivious assault.  It found him not guilty on the first two counts of sexual battery.  *Id*. at 884.  In Cause Number 94-128, the jury found Petitioner guilty of one count of sexual battery on a mentally defective person and one count of lewd and lascivious assault upon a minor.  *Id*. at 885.  In Cause Number 94-129, the jury found Petitioner guilty of one count of attempted sexual battery on a mentally defective person and one count of lewd and lascivious assault.  *Id*.

On June 10, 1996, Petitioner appeared for hearing on an amended motion for new trial and a motion for discharge of trial counsel and for sentencing.  Doc. 49, Ex. E.  The court denied the amended motion for new trial, denied the motion to discharge counsel without prejudice, refused to entertain Petitioner's *pro se* motions, and sentenced Petitioner to twenty years

imprisonment with a "trailing probation" of ten years.  *Id*. at 55; *see also* Doc. 49, Ex. EE.  At the beginning of this hearing, the issue of counsel's continued representation presented itself first:

> MR. REICH:  I have been in a quandary as to how to proceed this morning....Mr. Kever and I have had contact since the trial.
>
>                      * * *
>
> He has indicated to me a desire to assert before your Honor this morning, and to assert for purposes of appeal, ineffective assistance of trial counsel.
>
> My obligations are clear under the law.  I am trial counsel; there are certain things I must do as a matter of ethics and as a matter of procedure and statute:  Those are to make sure that all matters done to preserve issues for appeal have been done.
>
>                      * * *
>
> Mr. Kever has indicated to me that, I think, the way he would like to proceed is for me to argue the grounds on my motion for new trial; then allow him to argue *pro se*.  I don't know if your Honor wants to allow him to argue *pro se* while I am still attorney of record.
>
> I have a motion for discharge of trial counsel, which is also appropriate when the court is going to be considering, and I think appointing, the public defender's office for the purpose of appeal.
>
>                      * * *
>
> [H]e has filed some *pro se* motions that were not signed by me but have been signed by him, and filed with the clerk, and he wants you to hear.  Among those are allegations of–that I think need to be taken as allegations–of ineffective assistance of trial counsel.
>
> For that reason, I guess what I need to do at this point is see how Mr. Kever want to...proceed, and how your Honor wants to proceed.

> I think it's incumbent upon me at least to argue the amended motion for new trial.

Doc. 49, Ex. E at 8-10.

With Petitioner's agreement, counsel then argued the amended motion for new trial. *Id.* at 10-25. The court denied the motion, noting that the issues were "preserved for purposes of appeal...." *Id.* at 25.

The court then returned to the issue of counsel's continued representation:

MR. REICH:      Now, if I might address a matter as to how I should proceed.

              I have a motion for discharge of trial counsel. I believe that Mr. Kever does not wish me to proceed beyond this.

              Is that right, David?

THE DEFENDANT: Right.

MR. REICH:      Either on the issue of the sentence to be imposed or anything else; is that correct?

THE DEFENDANT: Right.

MR. REICH:      You don't wish me to make any argument to the court for a lesser sentence or a lower sentence within the guidelines or any of those things; is that right?

                      * * *

THE DEFENDANT: Yes.

MR. REICH:      However as trial counsel, I have the obligation to make sure that the appeal is set up. I have all of that paperwork necessary.

              If you discharge me as trial counsel, then I can't file those things for Mr. Kever.

* * *

And so I'm a bit in the dark as to how I should proceed.

You understand what I'm saying, David?

THE DEFENDANT: Yes.

MR. REICH:    Once I'm discharged as your lawyer, I can't...do those things that lawyers usually do:  like the notice of appeal, directions to the clerk, designation, and all those things.

I cannot then file or argue a motion to have the public defender appointed for the purpose of appeal; you understand that?

THE DEFENDANT: Yes.

*Id.* at 25-27.

Because the court was "not sure [Petitioner] fully responded to [counsel's] questions," it asked that counsel "get that on record for him first."  *Id.* at 28.  The discussion between counsel and Petitioner then continued:

MR. REICH:    All right.  You understand–

THE DEFENDANT: Yes.

MR. REICH:    –the dilemma that I am in right now, so far as doing those thing[s] I'm suppose[d] to do, David.

THE DEFENDANT: Yes.  Well, I have to file this notice of appeal myself, correct?

MR. REICH:    If the judge discharges me as your lawyer right now, then...I cannot, as a your lawyer, then file the things that have to be filed.

THE DEFENDANT: Uh-huh.

MR. REICH:    You understand that?

THE DEFENDANT: Right.

MR. REICH:          Do you want the judge nevertheless to discharge me right now?

THE DEFENDANT: Yes.

*Id*. at 28-29.

Counsel then proceeded to provide Petitioner with the originals and copies of the documents associated with filing an appeal that he had previously prepared for filing and explained the filing procedure to him. *Id*. at 29-31. Counsel then asked Petitioner if he was "sure [he] want[ed] to proceed in this way." *Id*. at 31. Petitioner responded, "Well, unless you can file them other motions for me, I do." *Id*.

The court then questioned Petitioner:

THE COURT:          [W]e're at the sentencing stage now. [Counsel] knows more about the trial than any other defense attorney does at this time, because he has been there and he's advised you all along.

THE DEFENDANT: Uh-huh.

THE COURT:          I think you might want to consider letting him at least represent you through the sentencing process, and then you and him can talk about whether he should withdraw after that, after he's filed any necessary appeal papers. He's capable of doing that and, as he says, he's prepared to do that today.

Now, I don't know that I can force you to have counsel....I don't know that I can force you to keep him as counsel, certainly not indefinitely.

But I think that the only thing left at this trial stage today is the sentencing.

He's taken care of the motions, he's preserved your record

for appeal....He's even got his motions and all ready to file for purposes of appeal after the court has sentenced you.

I would suggest that you at least temporarily withdraw your motion or have it held in abeyance until after the sentence and let him represent you on through the sentencing stage.

* * *

THE DEFENDANT:   Your Honor, could I ask you something?

THE COURT:       Yes, sir.

THE DEFENDANT:   Do you have copies of the motions I filed with you?

THE COURT:       There are a number of written documents, handwritten documents–

* * *

THE COURT:       –in the court file, yes.

THE DEFENDANT:   All right.  Do those motions get heard today–

THE COURT:       I have not heard those motions at this time–

MR. REICH:       Excuse me a second.

THE DEFENDANT:   Let me ask him a question now....I just want to know something:  Do those motions have to be filed before sentencing to go in on my appeal on my case?

THE COURT:       As far as I'm concerned, they're taken into the bosom of the court at this point in time.  They are not official documents that have been filed, because they were not filed by counsel of record.  Mr. Reich is counsel of record.

THE DEFENDANT:   Yes.  I asked Mr. Reich to file, and he said there was a conflict of interest; he couldn't.  He says the only thing he could do is withdraw and let me file so that's exactly what I'm–

THE COURT:       By "conflict of interest," you mean pertaining to ineffective

assistance of counsel?

MR. REICH:            Exactly, your Honor.

THE DEFENDANT: Yes, sir.  Yes, sir.

THE COURT:            That may well be true.  But I don't think that's...yea or nay
                     as far as him representing you for purposes of sentencing.

                     If you want to file those motions after the sentencing, I
                     don't see why you–

THE DEFENDANT: Then I can file it immediately after sentencing–that I can
                     go ahead and file; is that correct?

THE COURT:            Yes, sir, I think so.  I don't see any–

                     Do you know of any reason why he couldn't do that, Mr.
                     Reich?

                                    * * *

MR. REICH:            Judge, I am in a dilemma here.  Okay?  Mr. Kever wants
                     you to consider as part of and as additional ground for a
                     new trial ineffective assistance of counsel.

THE DEFENDANT: Yes, sir.

                                    * * *

MR. REICH:            You can in fact...sentence him and then consider additional
                     grounds for motion for new trial if you will--

THE COURT:            Allow his motions to stand.

MR. REICH:            If you allow his *pro se* motions to be deemed validly filed
                     but not yet heard.

                     The one you have denied is my motion.  There are
                     additional motions pending.

                     The record will reflect there are additional *pro se* motions
                     pending that Mr. Kever wants...the court to address prior to

the filing of the appeal papers; then I think he can do that.

But as soon as you discharge me, and you can, then I don't think I then have the authority to file the necessary appeal papers.

I don't think I...can, Mr. Kever.  You understand?

THE DEFENDANT:  I understand.

*Id*. at 31-35.

The court denied then denied Petitioner's motion "to have [counsel] removed from the case at this time, without prejudice to his raising them again after sentencing."  *Id*. at 35.

Petitioner then sought clarification from the court:

THE DEFENDANT:   Then I can–as soon as I'm sentenced, I can bring those motions up, you Honor?  Is that correct?

THE COURT:            It's without prejudice for you to raise any additional motions or renew those motions, yes, sir.

THE DEFENDANT:   That means I can, right?

MR. REICH:            Yes, sir.

THE DEFENDANT:   All right.  Thank you, your Honor.

*Id*. at 35-36.

After hearing counsel's arguments and sentencing Petitioner, the court returned to the issues of the outstanding motions:

MR. REICH:            Your Honor, I have pending a motion for the court to determine Mr. Kever's indigency for purpose of the public defender handling his appeal.  I have a proposed order.

I think at this point it's Mr. Kever's desire that your Honor discharge me.  I also have a motion for that.  Although that–the grounds on that motion are that I have done

everything necessary to perfect the appeal, I have not, because of the way Mr.--

THE COURT:           Mr. Reich, I think what I'd like to do is reserve ruling on any other pending motions at this time.

* * *

Those can be reset at another time unless you and the [State] want to get together and stipulate on some of that to save you coming over here. I'm not necessarily anxious to make you come over here again, but I don't think I'm in a position to relieve you right now either.

MR. REICH:           Okay. You understand what the judge said?

THE DEFENDANT: Yeah.

MR. REICH:           He's not going to discharge me. I'm still your lawyer.

THE DEFENDANT: Your Honor, I would like to have my [motions] heard now.

THE COURT:           The court would consider that at any time within the next 30 days, if you can mutually set those before this court.

THE DEFENDANT: The motions are already filed; they were filed a month ago.

THE COURT:           We're talking about any motions that Mr. Reich has to file or has filed that are pending now, the court would be willing to hear those within the next 30 days.

* * *

Any additional motions that Mr. Kever may file[ ] in proper person, the court would allow those to remain in the file for possible further consideration. I'm not going to preclude him from that.

But I believe at this point in time they're not proper because they are not filed through counsel.

THE DEFENDANT: Your Honor, he can't file for me. He said he couldn't, and you said...you would hear them, you said, without

prejudice.

THE COURT:            I believe what I–

THE DEFENDANT:  But I asked him if they would be heard today.

THE COURT:            I believe the court made its rulings today, and you may
                            want to discuss that with Mr. Reich further.  Thank you,
                            Mr. Kever.

THE DEFENDANT:  Boy, you'd do anything to keep a man from having a fair
                            shot, don't you.

*Id*. at 57-59.

Petitioner appealed his convictions and sentences, presenting four issues:  (1) whether
there was sufficient evidence that the victim was mentally defective; (2) whether the court erred
in excluding the victim's videotape deposition as a prior inconsistent statement; (3) whether the
court erred in denying the motion for bill of particulars; and (4) whether the court erred in
denying Petitioner's motion to discharge counsel.  Doc. 49, Ex. F.  The court of appeal found:

> Because the evidence presented at trial was insufficient as a matter of law to prove that the victim was "mentally defective" as that term is defined in [the Florida statute], we reverse the appellant's convictions for sexual battery upon a mentally defective person and attempted sexual battery upon a mentally defective person and direct the trial court on remand to enter judgments of conviction on the lesser included offenses of sexual battery and attempted sexual battery. The appellant's convictions for lewd and lascivious assault are affirmed. Because the appellant must be resentenced under a revised scoresheet, we vacate all of his sentences and direct the trial court on remand to resentence the appellant on all convictions using a revised scoresheet.

*Keever v. State*, 704 So.2d 222, 222-23 (Fla. Dist. Ct. App. 1998).

On remand, Petitioner represented himself with Mr. Galigani acting as standby counsel. Doc. 49, Ex. K. Before re-sentencing, Petitioner requested an evidentiary hearing because the "court transcripts ha[d] been altered," and he wanted to have the jury "brought back in." Doc. 49, Ex. L. The motion was denied. *Id.* The court then sentenced Petitioner to fifteen years imprisonment with "[a]ll cases concurrent and counts within cases concurrent" except for a term of 1.65 years in 94-128 to run consecutively to all other sentences. Doc. 49, Ex. K.

Petitioner appealed his sentence, arguing that the court erred in denying him an evidentiary hearing on the transcript issue, and that it imposed an "illegal sentence." Doc. 49, Ex. N. While Petitioner agreed that 16.65 years "is the correct maximum sentence," he argued that the sentence was improper because by "changing from a concurrent to a consecutive sentencing, the court added 10 years probation which was not correct." *Id.* The court of appeal affirmed without opinion. Doc. 49, Ex. O.

In January, 2000, Petitioner filed a motion for post-conviction relief in state court. Doc. 49, Ex. S. According to Respondent, he raised only one issue in this motion, i.e., whether the

trial record was altered, and if so, whether the alteration prejudiced Petitioner.[3]  The state court

dismissed  the motion, stating:

> Defendant alleges that his trial transcripts have been altered and requests an
> evidentiary hearing on the matter....Defendant alleges none of [the] grounds
> [recognized in Fla. R. Crim. P. 3.850]; instead, he simply claims that portions of
> the trial transcripts were modified.  The Court finds that this allegation is not
> properly raised in a 3.850 motion.

Doc. 49, Ex. T.

In April, 2000, Petitioner filed a petition for writ of habeas corpus in state court, arguing

that his attorney, Glen Gifford, `was ineffective "for not arguing that there were four instances of

[Petitioner's] right to self-representation that the Circuit Court violated resulting in harm and "in

his argument regarding the harm done by a denial of a statement of particulars."  Doc. 49, Ex. P.

He also charged that the court violated his "right against double jeopardy" and his right to a

speedy trial.  *Id*.  In May, 2000, the court of appeal denied the petition without written opinion.

Doc. 49, Ex. Q.  On July 24, 2000, the Florida Supreme Court dismissed the petition for review,

as it was "without jurisdiction."  Doc. 49, Ex. R.

While the petition for review was pending in the Florida Supreme Court, Petitioner filed

a second motion for post-conviction relief.  Doc. 49, Ex. U.  In that motion, Petitioner raised five

claims of ineffective assistance of counsel:  (1) that counsel was ineffective for failing to require

an expert witness to testify as to whether the victim displayed injuries and behavioral

characteristics of a sexually abused child, (2) that counsel was ineffective for failing to request a

---

[3]It appears either that Respondent and the state court missed numerous issues in
Petitioner's post-conviction motion, which the Court finds unlikely, or that the record presented
to the Court is mixed up, as the document represented to this Court as the original motion for
post-conviction relief, Doc. 49, Ex. S, contains numerous other issues.  *See id*. at 12-38.

mental competency examination of the victim, (3) that counsel was ineffective for failing to
object to suppression of photographs what would have impeached witness testimony, (4) that
counsel was ineffective for failing to question the victim as to whether she knew what a vagina
was and by failing to request that the prosecutor use an accurate definition of "vagina," and (5)
that counsel was ineffective for failing to investigate and determine whether the victim was
capable of understanding what an oath is and whether she possessed the requisite moral
obligation to tell the truth.[4]   Doc. 49, Ex. V.  He also continued to press his alteration claim via a
motion to correct record.  *Id*.

    In an exhaustive order, the state court considered each claim on its merits.  *Id*.  As to the
first claim, the court found that "any information regarding the victim's emotional state that
[Petitioner] wishes to compel is protected" under the psychotherapist-patient privilege, and
Petitioner had failed "to demonstrate any reason why the testimony of the victim's psychologist
can be compelled."  Thus, the court concluded, counsel's failure to compel such testimony was
not ineffective assistance.  *Id*. at 3-4.  Furthermore, because any testimony from the emergency
room examining physician himself would have been cumulative to evidence from other persons
and sources, Petitioner "was not prejudiced by counsel's failure to compel such testimony."  *Id*.

---

[4]Again, the contents of the document purported to be the second or amended motion for
post-conviction relief , Doc. 49, Ex. U, are not as represented by Respondent or as reflected in
the state court ruling.  The document which the Court has before it is actually three copies of a
June 8, 2000, document, none of which contains any recitation of any issues whatsoever.
Apparently, pages from Exhibits S and U have somehow, whether in copying the documents for
this proceeding or through misfiling in the state court record, either been combined or omitted.
While this certainly creates confusion for this Court, it will rely on the recitation of issues
outlined in the state court's ruling on the second motion for post-conviction relief, Doc. 49, Ex.
V, as Petitioner does not dispute that these were the claims he raised on that occasion.

at 4-5.

With regard to the second claim, the court found that the victim's testimony at trial indicated that "she satisfied the criteria for competency" and that because she was a victim of sexual abuse, under Florida law, her competency could not be questioned.  Counsel's performance in failing to request a competency examination of the victim was therefore "not deficient."  *Id.* at 7.

As to Petitioner's third claim, the court found that the suppressed photographs of Petitioner's trailer and adjacent property were not probative because they were "taken at a different time of year, with different environmental conditions, and at varying camera angles and positional views from the alleged incident."  Furthermore, in the court's view, "the impeaching evidence that [Petitioner] asserts the photographs contain–specifically that victim's brother could not see into [Petitioner's] trailer–was adequately presented during trial."  The subject photographs were therefore cumulative, and "[c]onsidering the Court's leniency,[5] [Petitioner's] Ground 3 claim appears trivial and without sufficient showing of prejudice, and, consequently, without merit."  *Id.* at 8.

Regarding Petitioner's fourth claim, the court held:

[T]he alleged deficiency was not prejudicial for two reasons:  1) Defendant has not demonstrated to which incident victim was referring to when she stated there was no penetration; and 2) the lack of a consistent definition for the word "vagina" was not, as distinguished from the case cited by Defendant, prejudicial to Defendant because even an inappropriate use of the term was substantially outweighed by incriminating testimony from other witnesses.

_____

[5]The court allowed other photographs into evidence and transported the jury for an actual view of the alleged crime scene.

*Id*. at 9.  Counsel was therefore not ineffective in failing to determine whether the victim knew what a vagina was and to request an accurate definition of "vagina."  *Id*. at 11.

As to Petitioner's final claim of ineffectiveness, the court, recognizing that this claim "is another factor related to victim's competency to testify," found that the "entire claim is predicated on Defendant's interpretation of victim's responses" and was an attempt "to demonstrate the victim's inability to understand the importance of the oath by drawing attention to discrepancies between the victim's testimony and her two depositions."  *Id*.  The court independently examined "the victim's ability to understand the inherent importance and moral obligation of an oath" even though counsel's "trial strategy of indicating discrepancies  was futile because the depositions were not in evidence...."  *Id*.  After examining the record, the court concluded that there was no indication that the victim lacked the moral obligation to tell the truth and that Petitioner's failure to "assert any specific inconsistencies sufficient to demonstrate that the victim was incapable of appreciating the importance of the oath" precluded a finding of prejudice.  *Id*. at 12.  Thus, "failure by counsel to determine if victim was capable of such an understanding does not constitute ineffective assistance."  *Id*.

Finally, the court examined Petitioner's motion to correct the record, a motion "based solely on Defendant's recollection of the proceedings and testimony" which "differed from the trial record."  *Id*.  The court concluded:

> Defendant...alleges the Court has affirmatively altered the transcript of his trial.
> Because neither the record nor the Defendant demonstrates any evidence of the
> alleged transcript alteration sufficient to refute the presumption of correctness
> [afforded by Florida law to a certified transcript], this claim is without merit.
> Even if, however, the Court chose the Defendant's claim over precedent,
> prejudicial error still does not exist.  This is because "not all omissions of
> transcript result in reversal for a new trial."  Morever, the central issue is whether

the missing transcript is "necessary for a complete review."

> In the instant case, the Court finds that the allegedly missing portions of the
> transcript are not necessary when reviewing this claim.  Specifically, Defendant
> alleges eight instances of transcript alteration by the Court....Of these claims, four
> are without merit...and the other four are refuted by the trial record....These
> claims are refuted or without merit even if portions of the transcript have been
> altered or omitted.  Therefore, Defendant has failed to demonstrate how the
> allegedly deficient record has prejudiced him whatsoever.

*Id*. at 13-14 (citations, emphasis, and footnotes omitted).

Petitioner appealed this ruling to the court of appeal, which initially relinquished

jurisdiction to the trial court "for reconsideration of [Petitioner's] motion for postconviction

relief with the benefit of all 178 pages of attachments [he] alleges were placed in the hands of

prison officials for mailing."  Doc. 49, Ex. W.  Petitioner filed the exhibits, Doc. 49, Ex. X, and

the trial court reconsidered its prior ruling.  In another exhaustive order, the court stated:

> Defendant's attachments consist generally of depositions; police and laboratory
> reports; photographs, emergency room records, and transcripts from the trial and
> resentencing hearing.  After carefully examining all attachments listed in the
> Appendix to Defendant's motion and comparing them to the evidence relied upon
> in reaching its previous decision, the Court finds that this additional
> documentation provides no new information which would affect the ordered
> rendered in this case.  Listed below is a brief  summary of each ground raised by
> Defendant and the reasons his attachments are insufficient to require a different
> finding on reconsideration.

Doc. 49, Ex. Y at 1-2 (footnote omitted).  The court then considered each claim separately.  As

to the first claim, it found that the depositions and lab reports offered by Petitioner were "not

sufficient to change the Court's original finding that this ground is without merit," as the treating

therapist could not be compelled to testify in violation of the psychotherapist-patient privilege

and either live or deposition testimony from the emergency room physician would have been

cumulative.  *Id*. at 2.

As to the second claim, the court found that the depositions, police narrative, arrest report, and statements by defense counsel "would not have changed the Court's original ruling," since "conflicts in testimony go to the credibility, not competence, of the witness, and credibility is solely a question for the jury." *Id*. at 2-3.  With regard to the third claim, the court held that the "photographs contained in Defendant's attachments would not have changed the Court's findings on this ground, as the photographs were proffered into evidence at trial and found to be inadmissible by the judge." *Id*. at 3.

As to the fourth claim, the court found that "[a]ny alleged misuse of the term by the victim...would not bolster Defendant's argument concerning the State's misuse of the term," and thus, the victim's deposition and the diagram of the female body with markings made by the victim to illustrate the offenses that took place were "not sufficient to change the Court's original finding that this ground is without merit." *Id*. at 3-4.  Regarding the fifth claim, the court determined that this was "another attempt by Defendant to discredit the victim based on discrepancies in the victim's responses to questioning" and found that the "alleged conflicts in testimony" were insufficient to show that the victim did not understand "the solemnity of an oath and appreciate the need to testify truthfully before the jury." *Id*. at 4.

Finally, as to Defendant's alteration claim, the court found that the certified mail receipt and letters from Petitioner and others "concerning Defendant's attempts to have the record retranscribed," did not "change the law cited in the Court's order dictating a finding that this ground is without merit," as the attachments did not "serve in any way to provide crucial missing information or to bring about a clearer understanding of the issues raised in Defendant's motion." *Id*. at 4.

Petitioner appealed this ruling as well, *see* Doc. 49, Ex. Z, and the court of appeal affirmed without written opinion.  Doc. 49, Ex. AA.

Petitioner then filed a petition for writ of habeas corpus in this Court.  Doc. 1.  The Court directed Respondent to file an answer, and he moved to dismiss on the ground that Petitioner had filed a mixed petition.  Doc. 31.  Respondent conceded that Petitioner's sentences "do not conform to the oral pronouncement and exceed the statutory maximum."  *Id*.  Petitioner "admit[ted] error and withdr[ew] that claim...."  Doc. 33.  The Court therefore recommended that the motion to dismiss be denied, and the cause remanded for further proceedings.  Doc. 41.

By separate order entered that same date, the Court disposed of the remaining pending motions, which included motions related to discovery and a motion for leave to file an amended petition:

> As to the first motion [for discovery], the Court finds that the motion is not well taken at this stage.  If the district judge adopts the R&R, upon remand, the Court will order Respondent to respond to the petition.  In Ground Five of his petition and then through the various motions for discovery, Petitioner has put Respondent on notice of his double jeopardy claim.  The Court is confident that in responding to that ground Respondent will submit the complete court record which includes what occurred during the particular proceeding in 1995, to which Petitioner points.  If Respondent does not fulfill its obligations to present the court record as required by the rules governing habeas corpus proceedings, then Petitioner may renew his discovery motion at the appropriate time.  This line of reasoning applies equally to the other two motions related to discovery, as the Court is certain that Respondent will address Petitioner's discovery concerns when it assembles the entire state court record.
>
> As to Petitioner's motion for leave to amend his petition, the Court has reviewed the proposed amendment and finds nothing which warrants the filing of an amended petition.  With the exception of a few case citations and some deletions, the proposed amended petition is almost verbatim of the petition now on file.  Because the Court will want to move this matter forward as soon as it is remanded to the undersigned, the Court believes that the most expeditious way to handle Petitioner's withdrawal of Ground Four is to recognize the withdrawal and

proceed with consideration of the original petition with that in mind.

Doc. 42.

Petitioner objected to the Court's rulings, Doc. 43, arguing, in part, that the undersigned "misinterpreted the Motion to Amend and the proposed Amended Petition." Doc. 45. According to him, "he did not withdraw the entire fourth ground, but only one of the factual bases of the fourth ground." *Id.* In ruling on Petitioner's objections, the Court found that Petitioner was "correct in arguing that he did not withdraw his entire fourth ground for relief," and that he had remedied "the flaw in his petition brought to light by the Respondent's Motion to Dismiss." *Id.* The Court therefore granted the motion to amend, denied the motion to dismiss, and directed the Clerk to "post the Amended Petition." *Id.* The amended petition was immediately docketed,   Doc. 46, and the Court directed Respondent to file a response to the amended petition. Doc. 47.

Respondent filed his response, Docs. 48 & 49, and Petitioner proceeded to file a plethora of motions in reply, including motions for transcription of mistrial, to preserve court reporter notes, and for leave to file another amended petition. *See*, *e.g.*, Docs. 52, 57, & 58. With regard to the motion to amend, Petitioner advised the Court that he needed to file an amended petition "to correct the 'major omissions and mistakes' pointed out by Respondent in his answer, and to submit complete exhibits that he believed Respondent would provide to the Court." Doc. 75. The Court denied the motion but granted him time to file a reply which "addresses his concerns and includes the additional exhibits which he wants the Court to consider." *Id.* Thereafter, Petitioner filed his reply. Doc. 88.

In his amended petition, Petitioner asserts the following claims:

(1)    The trial court erred "by not inquiring into unambiguous motion for self-representation at

sentencing" which "resulted in denial of right to be heard on several valid complaints of

ineffective assistance of counsel";

(2)    The trial court erred in denying a bill of particulars because it "allowed alteration of dates

of shop incident during trial resulting in prejudice when alibi witness became irrelevant";

(3)    Counsel failed to lay a proper foundation for admission of the victim's video deposition;

(4)    The trial court erred at resentencing by "increasing the incarceration and supervision

penalty on an unaffected count";

(5)    The trial court erred in dismissing jury without "announc[ing] necessity for mistrial" and

without Petitioner's consent;

(6)    The trial court violated "agreement" to try all three criminal cases on February 13, 1995;

(7)    Counsel was ineffective for failing to investigate and move for in camera inspection of

psychologist's records and to subpoena the psychologist and the emergency room

physician for trial.

(8)    Counsel was ineffective for failing to request an "accurate description of a vagina after

repeated misidentification of vulva as vagina by State and [victim]";

(9)    Counsel was ineffective for failing to request a competency hearing on the victim as she

"made dozens of inconsistent statements under oath supporting view she felt no moral

obligation to be truthful under oath of perjury";

(10)   Counsel was ineffective for failing to "support or object to denial of impeaching

photographs based on perception" and for failing to "measure witness, prepare site with

steps and measurements to duplicate witness's view, or inform jurors reason why view

was important";

(11)     The trial court erred in denying Petitioner an evidentiary hearing "to correct record at resentencing without ruling on merits."

(12)     The trial court erred "in convicting of attempted sexual battery where there is no evidence on record that [Petitioner] intended or attempted to put anything into [the victim's] vagina during shop bookroom incident";

(13)     Counsel was ineffective for refusing to impeach arresting officers who "committed perjury";

(14)     The trial court violated Petitioner's due process rights by citing "patently false evidence in denial of 3.850 motion and has refused to correct known errors in trial record."

Doc. 46.

Respondent concedes the amended petition is timely, Doc. 48 at 13, but denies Petitioner is entitled to any relief.  Each claim will now be considered in turn.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if

the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The fact that the state court did not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245, 1255 (11th Cir. 2002). Under § 2254, the

Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation.  *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982);  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).  This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations.  *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & (c)).  To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id*. at 845.  In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim."  *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*).

Claims which have not been fairly presented to the state court but are defaulted from state court review are considered technically exhausted because no remedies are available for purposes of § 2254(c).  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  *See also White v.*

*State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

> I.     Trial court erred "by not inquiring into unambiguous motion for self-representation at sentencing" which "resulted in denial of right to be heard on several valid complaints of ineffective assistance of counsel."

In this claim, Petitioner argues that he "filed to be pro se and sent a letter to the judge explaining why," but the court and counsel "coerced [him] into retaining counsel through sentencing by implying the [court] would hear his motions afterwards."  Doc. 46 at 5.  However, after sentencing, the court denied "removal of counsel, but forbade filing of any motion for a hearing."  *Id*.  Petitioner "felt tricked/deceived and had never abandoned his desire to be pro se."  *Id*.  According to Petitioner, there was "collusion between counsel's conflict of interest and [the court's] abuse of discretion violated Petitioner's right to choice of counsel...."  *Id*.

In response, Respondent concedes this claim was exhausted on direct appeal but maintains that Petitioner cannot show that the state court decision denying this claim was contrary to or an unreasonable application of "state law" since Petitioner "abandoned his request to represent himself."  Doc. 48 at 20.  Furthermore, even if the state court decision was in error, Respondent maintains that there was no harm to Petitioner because

he was successful on appeal in securing vacation of some of the convictions with remand for imposition of lesser included offenses and resentencing. *Id*. at 20-21. Petitioner represented himself at resentencing, and thus, "any error which occurred at the original sentencing was cured at the re-sentencing." *Id*. at 21.

In reply, Petitioner argues that when he "made it clear counsel was ineffective and he wanted him removed to argue [counsel's ineffectiveness]," the court was required to conduct another *Faretta* hearing. Doc. 88 at 3. Instead, according to Petitioner, the court and counsel "coerced and tricked" him by "falsely promising to hear [the motions] later after sentencing." *Id*. Petitioner accuses the court and counsel of lying to him and claims that counsel knew "that filing the notice of appeal would prevent [Petitioner] from showing [counsel's] incompetence." *Id*. Thus, a "conflict of interest arose and [counsel] protected himself and he abandoned his client's best interest after agreeing to remove himself." *Id*. Petitioner further charges that counsel committed malpractice by failing to inform him that he "could be denied a ruling on ineffectiveness if not done before sentencing was completed." *Id*. In short, the trial court "vindictively" denied counsel's removal without a *Faretta* hearing "knowing full well that [the court] was precluding a hearing on ineffective assistance of counsel," and counsel then "interposed and prevented [Petitioner] from explaining himself and obtaining a ruling." *Id*.

The Court would agree that in all probability the state court decision on this issue was contrary to or an unreasonable application of *Faretta*.[6] Assuming *Faretta* applies in

_____

[6]While *Faretta* plainly applies to a criminal defendant's demand to represent himself during trial, it does not apply to appellate proceedings, *see Martinez v. California Court of*

the sentencing context, the Court cannot agree that Petitioner truly "abandoned" his invocation of his right to self-representation, since (1) his agreement to proceed with counsel at sentencing was predicated on the court's assurances that it would entertain his ineffective assistance of counsel motions after sentencing, which it did not do, and (2) the court failed to explain its refusal to allow him to proceed *pro se* such that this Court could discern a recognized ground under *Faretta* for its decision, e.g., the court believed that Petitioner was using "the courtroom for deliberate disruption" of the proceedings or he was deliberately engaging "in serious and obstructionist misconduct" or he was attempting "to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46. The right to proceed *pro se* is "either respected or denied; its deprivation cannot be harmless." *Mckaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984). Thus, "[i]f the deprivation of this right cannot be harmless it must, by definition, be prejudicial." *Dorman v. Wainwright*, 798 F.2d 1358, 1370 (11th Cir. 1986).

With that said, however, the Court finds that the issue is moot. On appeal, Petitioner successfully achieved the vacation of certain convictions with remand for re-sentencing, and at the new sentencing hearing, Petitioner was allowed to represent himself. This is as much as this Court would have recommended as relief on this claim. Although Petitioner may not have been allowed to pursue his claims of ineffectiveness on his timetable, he was never foreclosed from pursuing them, as he believes, since they could certainly have been raised after sentencing, as the court advised him, or on a

---

*Appeal*, 528 U.S. 152 (2000), and the Court has not decided its applicability to sentencing hearings although federal appellate courts have universally recognized its applicability.

motion for post-conviction relief.  Thus, the only relief available to Petitioner on a successful *Faretta* challenge to sentencing was re-sentencing with Petitioner serving as his own counsel.  Since he has already achieved all that this Court could have legally afforded him, the claim is moot.

      II.      Trial court erred in denying bill of particulars.

      According to Petitioner, the failure of the trial court to grant him a bill of particulars "allowed alteration of dates of shop incident during trial resulting in prejudice when alibi witness became irrelevant."  Doc. 46 at 6.  Petitioner elaborated:  "State ambushed [him] by changed date of shop allegations invalidating one witness and preventing locating others."  *Id*.  In his reply, he more specifically claims that in his state habeas petition, he had "argued appellate counsel was ineffective not debating the denial of the statement of particulars [which] allowed State to move the book room allegations from Tuesday to Thursday after producing a friendly witness and an alibi."

      The focus of this claim is testimony regarding the "book room" incident.  According to the initial investigation reports, the victim advised the officer that the "book room" incident took place on Tuesday, July 12, 1994, about noon.  Doc. 88, Ex. 2d.  In her deposition, the victim stated that the book room incident occurred on Wednesday, July 13, 1994. Doc. 49, Ex. DD at 28.  At trial, the victim could not pinpoint the dates that this incident occurred.  In one exchange with defense counsel, the victim agreed that the "shop" incident occurred "last," i.e., on the day when she finally told her mother what had happened, *id*. at 271-272, but later, she indicated that she was not sure when this incident occurred.  *Id*. at 278-279.  During Petitioner's case in chief, one of his witnesses,

an alibi witness, testified that he was on the telephone with Petitioner on July 13 at approximately 6:30 p.m. and heard the victim in the background. *Id*. at 671-73. Though he had testified during a proffer of evidence that he was at Petitioner's residence on July 12, "before lunch, eleven, 11:30," and that he stayed there for approximately thirty minutes, during which time he did not see the victim, this particular statement was not presented when he was allowed to testify in the jury's presence.

Respondent maintains that Petitioner did not exhaust this claim in state court. According to Respondent, Petitioner challenged the trial court's failure to allow him a bill of particulars on direct appeal on purely state law grounds, but because he did not properly preserve the issue for appellate review, it was procedurally barred, and the state court did not review the merits of the claim. Doc. 48 at 21-22. In Respondent's view, although the claim is technically exhausted, since Petitioner has no further means for redress in state court, he cannot show cause and prejudice for his default. *Id*. at 23-25.

Petitioner presented the issue of whether the court erred in denying his *pro se* motion for bill of particulars in his direct appeal. Doc. 49, Ex. F. In that proceeding, however, Petitioner focused strictly on whether the court's denial of the bill of particulars was a violation of state law. *Id*. at 33-38. He did not raise any federal issues surrounding that claim, and he also did not challenge the sufficiency of the information beyond the matters raised with regard to the bill of particulars. A challenge to the sufficiency of an information on the grounds stated in Petitioner's motion for bill of particulars and brought forward by him on appeal must be raised by pretrial motion, or the defect is waived under Florida state law. *Tucker v. State*, 417 So.2d 1006, 1009 (Fla. Dist. Ct.

App. 1982); *cf. Hope v. State*, 588 So.2d 255, 263 (Fla. Dist. Ct. App. 1991) (challenge to information which wholly fails to charge offense under Florida law may be raised at any time before trial, after trial on appeal, or by habeas corpus, as conviction thereon violates due process).

In his petition for writ of habeas corpus, Petitioner stated the issue as follows: "Was Appella[te] Counsel Ineffective When he Failed to Show that the Trial Court has Abused its Discretion by not Inquiring if there were Deficiencies in the Information and that those Deficiencies did prejudice the Defendant?"  Doc. 49, Ex. P at 11.  While the issue was framed as an ineffective assistance of counsel claim, in the body of the claim, Petitioner made arguments, *inter alia*, that the Information and the proof offered at trial were improperly at variance and that the Information was unconstitutionally vague.  *Id*. at 19.

In the instant proceeding, Petitioner has specifically worded the issue as an attack on the trial court's ruling denying him a bill of particulars.  The denial of a bill of particulars in state court does not rise to "constitutional proportions so as to constitute grounds for federal habeas relief" absent "prejudice to substantial rights of the defendant."  *Dillen v. Wainwright*, 449 F.2d 331, 332 (5th Cir. 1971).[7]  The prejudice, as alleged by instant Petitioner, is that the court's denial of a bill of particulars allowed the State to alter the date of the "shop incident," thereby making his alibi witness

---

[7] Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on the Eleventh Circuit.  *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

"irrelevant."  In other words, a variance of sorts occurred because the facts proved at trial deviated from the facts set forth in the investigative reports and discovered during the victim's deposition.  *See United States v. Keller*, 916 F.2d 628 (11th Cir. 1990) (explaining difference between "amendment" and "variance" of indictment).

The Court believes that it is appropriate for it to assume exhaustion of this claim, especially since it has no merit.  Petitioner is mistaken in his belief that the State "ambushed" him during trial "by changing [the] date of [the] shop allegations."  The testimony is clear that it was Petitioner's counsel, not the State, who suggested to the victim that the shop incident occurred "last," but that, in the end, the victim was not able to pinpoint specific dates on any of the incidents.  This went to the weight and credibility of the victim's testimony, but it did not prejudice Petitioner in the sense that he was deprived of a fair trial or a fair opportunity to put on a defense.  Petitioner's alibi witness testified about an early evening telephone call with Petitioner in which he heard the victim's voice in the background.   The presentation of this fact to the jury did not make the alibi witness' testimony irrelevant or invalid, since it certainly cast doubt on the victim's story that she had been sexually battered earlier on the day in question, regardless of where the alleged incident occurred, because it seems incredible that the victim would voluntarily return to Petitioner's home on that same day under the circumstances.  A witness' credibility is purely a matter for the fact finder, and merely because a victim is unable at trial to relay the facts with the same specificity that she did to the police in the original investigation and then later at her deposition does not mean that a prejudicial variance has occurred.

III.     Counsel failed to lay proper foundation for admission of victim's video
         deposition.

In this claim, Petitioner argues that his attorney refused to adequately question the

victim "about specific cases of inconsistent statements" and to question her in an

"adversarial manner."  Do. 46 at 7.  Furthermore, counsel "fed" the victim "dozens of

leading questions supporting her, instead of defending his client."  *Id.*  Counsel's failures

prevented the introduction of the "most important exculpatory evidence," the victim's

videotaped deposition in which she "laughed 5 times while describing rape and

molestation" while at trial "she could not testify without crying constantly."  *Id.*

In response, Respondent maintains that Petitioner did not exhaust this claim in

state court and that he cannot show cause and prejudice from his default.  Doc. 48 at 26-

27.  In reply, Petitioner agrees that he "did not exhaust this particular point of law"

because of his "lack of legal training."  Doc. 88 at 6.

Because this claim has not been fairly presented to the state court and the time for

pursuing state court remedies thereon has expired, the claim is defaulted from state court

review and is therefore technically exhausted. *Coleman*, 501 U.S. at 732.  Petitioner must

therefore show cause for the default and actual prejudice as a result of counsel's alleged

ineffectiveness or demonstrate that the failure of this Court to consider the claim will

result in a fundamental miscarriage of justice.  *Id.* at 750.

To show cause for a procedural default, Petitioner must demonstrate that "some

objective factor external" to him impeded his effort to raise this particular claim of

ineffectiveness in state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir.

2003).  Petitioner's *pro se* status does not meet this definition of cause, and thus, the question of prejudice does not arise.  While the Court may allow a procedurally defaulted claim without a showing of cause or prejudice to correct a fundamental miscarriage of justice, to meet this criteria, the Petitioner must show this is an "extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  *Id*.

    In this Court's view, there was no constitutional violation in the way counsel handled the questioning of the victim or in his arguments for the admission of her video deposition.  Under *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

    With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's

performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16.  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In Florida, extrinsic evidence, such as a deposition, of a witness' prior inconsistent statement is generally inadmissible unless certain prerequisites are fulfilled or the "interests of justice otherwise require."  Fla. Stat. Ann. § 90.614(2).  If the witness denies making the prior inconsistent statement or "does not distinctly admit making" the statement, then extrinsic evidence of the statement is admissible. *Id*.

Counsel did what he could to minimize harm to Petitioner by the victim's emotional in-court behavior by objecting "to continuing on until [she] can compose herself."  Doc. 49, Ex. D at 225.  In counsel's view, to do otherwise "would cause this

jury to feel sympathy for her," and he asked that the record reflect that she was "actively

crying, and that she is wiping her face and her eyes with her tissue." *Id.* Counsel

continued:

> And I think until and unless this witness can testify without that kind of
> behavior, her testimony is prejudicial to the defendant.
>
> If she is unable to testify without doing this...then the prejudice to the
> defendant is severe. Because the jury is going to be concerned not with
> what she's saying but with the way she's saying it.

*Id.* at 225-226. The court allowed a short recess for the victim to compose herself, and

counsel thereafter pointed out to the court that the victim had previously been able to

continue her deposition without crying. *Id.* 227. The victim was a minor with limited

mental capacity, and counsel's failure to question her in the "adversarial manner" that

Petitioner wanted does not amount to deficient performance. Counsel's questioning was

obviously sensitive and tailored to her intelligence level, her age, and the circumstances,

but it was thorough and direct. The Court has no basis for finding that no reasonable

attorney would have handled her in a similar manner as required by *Strickland*.

Furthermore, the victim's laughter during her deposition does not in and of itself

operate as a prior inconsistent statement, and counsel attempted from the beginning of his

cross-examination of her to put into the jury's mind the idea that the victim had given

several different versions of the events at issue, *see*, *e.g.*, *id.* at 257-60 & 285, and he

asked her directly several times if she had told the police or the "other lawyer"[8]

something different than what she was telling the jury. *See*, *e.g.*, *id.* at 289-93 & 296.

---

[8]Petitioner's previous counsel, Mr. Galigani, had taken the victim's deposition.

Furthermore, counsel attempted to introduce the victim's entire deposition, but the court denied the request.  *Id*. at 679-90.  Counsel made cogent arguments for its introduction and preserved the issue for appeal, *see* Doc 49, Ex. F at 23-32, and he cannot be faulted merely for failing to prevail on the introduction of this piece of evidence.

Assuming arguendo that counsel rendered ineffective assistance with regard to his failure to secure the admission of the videotape, the evidence at trial was such that even a suggestion of actual innocence would be specious.  *See*, *e.g*., Doc. 49, Ex. D at 452-55.  Therefore, Petitioner is not entitled to relief on this claim.

IV.     Trial court erred at re-sentencing.

In this claim, Petitioner charges that the "consecutive sentence is illegal because it increased the penalties on a conviction, unaffected by appeal, after a portion of the sentence had already been served.  The new sentence could result in serving an additional 6.65 years."  Doc. 46 at 7-8.  Respondent maintains that Petitioner has failed to allege a violation of federal law, Doc. 48 at 30, to which Petitioner responds that failing to give credit for "time already served" and "increasing a sentence on an unaffected count violated Double Jeopardy and Due Process Clauses of the United States Constitution."  Doc. 88 at 7.[9]

_____

[9]He then directs the Court to his proposed second amended petition accompanied by a suggestion that if the Court does not consider the proposed amendments, the "ground will not be ruled on its merits...."  Doc. 88 at 7.  Although the Court denied Petitioner the right to file a second amended petition and specifically directed him to file a reply which addressed his concerns, it has, out of an abundance of caution, examined the pertinent pages of the proposed amendment and the proposed supporting memorandum and can say without hesitation that there is nothing in those documents which substantively changes or expands Petitioner's argument as stated in the documents which are properly before the Court, i.e., the amended petition and the

The detention of a prisoner beyond expiration of his sentence without court order or warrant constitutes a violation of due process. *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980). Furthermore, a sentence which is vindictively increased following a successful appeal violates due process. *North Carolina v. Pearce*, 385 U.S. 711 (1969). Thus, although Petitioner does not cite any federal constitutional law in his petition, he has sufficiently alleged a violation of federal law in this claim. With that said, the Court turns to whether he fairly presented this claim to the state court. In his appeal of his resentencing, Petitioner claimed that the imposition of the consecutive sentence "violates state and federal law" and cited a Florida state court case which found a violation of due process pursuant to the Fifth and Fourteenth Amendments. Doc. 49, Ex. N at 24& 27. As noted previously, the court of appeal affirmed the resentencing without written opinion. *See* Doc. 49, Ex. O.

In this Court's view, it is a very close call as to whether Petitioner has properly exhausted this claim. However, given that Respondent has not questioned the validity of exhaustion on this issue, the Court will turn to whether the state court decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. Even now, Petitioner does not cite the Court to any United States Supreme Court case to suggest that the state court's decision met these criteria such that this Court should not defer to its decision. As the Court calculates Petitioner's sentence, it was decreased from 20 years imprisonment with 10 years of probation to 16.65 years with 10

---

reply. *See* Docs. 57-2 at 14 & 16 of 83 and 57-5 at 15-16 of 31.

years probation.  His sentence was therefore not increased, a factor critical in triggering

any suggestion of vindictiveness under *Pearce* and its progeny.  *See*, *e.g.*, *Alabama v.*

*Smith*, 490 U.S. 794 (1989) (no presumption of vindictiveness when sentence imposed

after trial is greater than that previously imposed after guilty plea).

> V.     Trial court erred in dismissing jury without "announc[ing] necessity for
>        mistrial" and without Petitioner's consent.

On the face of the amended petition, the Court cannot discern the federal nature of

this claim.  In his reply, however, Petitioner couches this claim as a violation of double

jeopardy.  According to him, trial had already commenced in Cause Number 94-80 when

the court refused to rule on the State's motion to prohibit him from personally conducting

the cross-examination of the victim.  Doc. 46 at 8a; *see also* Doc. 57-3 at 16-17 of 80

(Motion to Preclude Defendant from Conducting Personal Cross Examination of Victim).

The court then "coerce[d]" Petitioner into "accepting the P.D. to question

the...prosecutrix" and granted a short continuance for counsel to "formulate trial

strategy."  Doc. 46 at 8a.  The court then "abruptly thanked and dismissed the jury"

without discussion or "announc[ing] necessity for mistrial" and without Petitioner's

consent.  *Id.*; Doc. 88 at 8.

Respondent maintains that the issue presented here is not the same issue presented

to the state court, and though the claim is technically exhausted, Petitioner has not shown

either cause, prejudice, or a fundamental miscarriage of justice.

The transcript of this hearing, which Respondent provided to the Court only after

Petitioner pressed the matter, shows a slightly different version of events than that

alleged by Petitioner.  Petitioner now swears under penalty of perjury that the transcript

from which the Court has just quoted extensively, the one which he pressed the Court to

secure, is a "fabrication."  Doc. 88 at 9.  According to him, the jury "was sworn,

impaneled and heard a female witness testify over a speaker-phone before [the court]

dismissed the jury without consent or necessity."  *Id*.

The Court does not believe that the transcript is a fabrication, but it also does not

believe Petitioner "is lying under oath."  *Id*.  Rather, the Court believes that Petitioner,

who, at the time, was a novice to the criminal justice system, is merely confused.

Under Florida law, the selection of a jury begins with the compilation of an

annual "jury list."  Fla. Stat. Ann. § 40.02(1).  From that jury list, the clerk of court

randomly selects "such number of persons as he or she deems necessary or expedient for

a jury venire...."  Fla. Stat. Ann. § 40.221.  From that venire, "any jury may be

organized...."  *Id*.  "When persons named in a jury venire...are summoned to attend a

court as jurors, they may be placed in a jury pool from which the court may draw persons

to serve as jurors."  Fla. Stat. Ann. § 40.231.

> Prospective jurors, i.e., persons in the jury venire,
>
> shall be sworn collectively or individually, as the court may decide.  The
> form of the oath shall be as follows:
>
> "Do you solemnly swear (or affirm) that you will answer truthfully all
> questions asked of you as prospective jurors, so help you God?"

Fla. R. Crim. P. 3.300(a).  The court and counsel may then conduct voir dire, i.e., they

may examine the prospective jurors to determine whether they are "qualified to serve" on

the jury or whether they should be challenged from service for some other reason.  *Id*. at

3.300(b) & (c); Fla. R. Crim. P. 3.310-3.350.  It is from this venire that the petit jury is

actually selected.  After the petit jury is selected, it is sworn a second time, with the court

administering a different oath.  Fla. R. Crim. P. 3.360.

Jeopardy generally attaches only after the petit jury is impaneled and sworn.

*State v. Roberson*, 888 So.2d 727 (Fla. Dist. Ct. App. 2004).  As previously noted, for

those chosen to be on the petit jury, this requires that they be sworn in a second time

using a different oath.  While there are exceptions to this general rule regarding the

attachment of jeopardy, *see Koenig v. State*, 497 So.2d 682 (Fla. Dist. Ct. App. 1986),

none of them are applicable here.  While the Court does not doubt that the entire **venire**

was initially sworn as required by Florida law, it does not believe–and the certified state

court record does not support–that the **jury** was ever actually sworn after its selection.

The record also indicates that while "a female witness" may have testified over a speaker

phone, as Petitioner alleges, it appears that she testified as a part of the court's pre-trial

consideration of various pending motions, not as a witness in the trial itself.  *See* Doc. 61

at 18-19.  The record also shows that before dismissing the jury, the court meticulously

explored Petitioner's desire to represent himself, his agreement to the continuance, and

his understanding of all that had transpired

Thus, this claim that Petitioner's double jeopardy rights were violated is wholly

without merit.

VI.    Trial court violated "agreement" to try all three criminal cases on
       February 13, 1995.

In this claim, Petitioner appears to be raising a speedy trial violation.  Doc. 46 at

8b.  According to him, he agreed to withdraw his speedy trial motion demanding trial be

held in all three cases on February 13, 1995, in exchange for assistance from the Public

Defender in obtaining certain test results from the Florida Department of Law

Enforcement.  *Id*.  Petitioner did not receive the test results until several months later, and

thus, because the State "did not fulfill its end of agreement," Petitioner's speedy trial

waiver "became null and void," and the "denial of speedy trial in case 94-129 resulted in

harm when State shifted date of shop incident during trial from Tuesday to Thursday."

Doc. 88 at 10.[10]

       In response, Respondent maintains that although Petitioner's claims are unclear,

he appears to be raising a state law speedy trial claim, not a federal speedy trial claim,

which is not cognizable on habeas review.

       Though this exact claim was raised in state court, *see* Doc. 49, Ex. P at 5, it was

not raised as a federal speedy trial claim, only as a violation of the Florida Rules of

Criminal Procedure.  *See id*. at 23.  As Respondent points out, claims grounded solely on

violations of state law are not cognizable on federal habeas review, as a violation of a

state statute or rule of procedure is not, in itself, a violation of the federal constitution.

*Engle*, 456 U.S. at119.  Though Petitioner has not specifically alleged a violation of his

constitutional right to a speedy trial and has not exhausted such a claim in state court, out

_____

       [10]Despite the Court's clear directions to Petitioner to bring forward in his reply all of his
concerns, he has again pointed the Court to the proposed second amended petition for federal
authority and to show actual prejudice.  Doc. 88 at 10.  Again, merely out of an abundance of
caution, the Court has examined the pertinent pages of the proposed amendment and the
proposed supporting memorandum and does not find anything in those documents which
substantively changes or expands Petitioner's argument.

of an abundance of caution, the Court will nevertheless consider the *Barker* factors for

assessing a federal speedy trial claim.

The factors for assessing the merits of a Sixth Amendment speedy trial are (1) the

length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the

right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-32

(1972). The first factor serves a "triggering function." *United States v. Dunn*, 345 F.3d

1285, 1296 (2003). In other words, unless there has been a presumptively prejudicial

period of delay, the Court need not examine the remaining three factors. *Id.*

In this case, there was a delay of approximately eighteen months between

Petitioner's charge by information on August 11, 1994, in Cause Number 94-80 and the

first day of trial testimony on February 28, 1996, and seventeen months between the

filing of the charges in Cause Numbers 94-128 and 94-129 and the first day of trial.

These delays are therefore presumptively prejudicial.

Even so, to prevail, Petitioner must show that the delays resulted in actual

prejudice to his defense unless each of the first three *Barker* factors weighed "'heavily'"

against the State. *United States v. Harris*, 376 F.3d 1282, 1290 (2004). They do not.

It appears the first time this matter was continued was in November, 1994. Doc.

88, Ex. 53a-c. At that time, Petitioner's counsel, Mr. DeThomasis sought a continuance

to explore the possibility of a plea. *Id.* at 53b. If the plea did not go forward, then he was

prepared to announce the case ready for trial in January, 1995. *Id.*[11]

---

[11]Petitioner disputes that he agreed to this continuance and maintains he was not present
for the proceeding. In support of his contention, he has attached a copy of a letter from the

Petitioner then made his *pro se* motion for speedy trial, which the Court heard at the February 9, 1995, hearing.  Despite Petitioner's assertions to the contrary, there was never an "agreement" to try all three cases in February, 1995.  While Petitioner certainly made a demand for a speedy trial, the body of that motion goes only to one case, not all three as he now asserts.  Though he put all three case numbers in the style of the motion, in the body of the motion, he only argued that "185 days" had passed since his arrest in Cause Number 94-80.  He does not otherwise mention the other two cases.  Doc. 49, Ex. B.  Thus, while Petitioner asserted his speedy trial rights in 94-80, he never asserted those rights in the other two cases, and thus, the third *Barker* factor weighs against him.

Furthermore, there is nothing in the content of the transcripts of the February 9, 1995, proceedings that even hints at an  "agreement," and Petitioner's suggestion that the transcripts have omitted references by the trial court directing Petitioner to read the "mittimus," Doc. 88 at 10, does not advance a speedy trial claim.  In addition, Petitioner plainly waived his right to a speedy trial, and while he questions the accuracy and integrity of the transcript, he admits in his amended petition that he did in fact waive his speedy trial rights, an admission which is plainly supported by the record.

Trial was then scheduled to begin in February, 1995, on Cause Number 94-80 with trial on the other two cases to occur in the succeeding two months.  Doc. 49, Ex. CC

---

Gilchrist County Sheriff's Office which states that it had no records that Petitioner was "transported to court on November 29, 1994."  Doc. 88, Ex. 54.  This is of no consequence. Even if Petitioner did not agree to the continuance, no federal speedy trial violation occurred between the time of the Information and the date that Petitioner first asserted his speedy trial right in January, 1995, as the length of delay was only 185 days by Petitioner's calculations, hardly a sufficient amount to implicate the Sixth Amendment.

*Case No: 1:03-cv-00114-MP-AK*

at 18.  On the day that trial began, Petitioner withdrew his request for self-representation and asked that counsel be appointed for him.  The case was then continued on defense counsel's motion and with Petitioner's specific agreement.  At that time, he specifically and unequivocally waived his speedy trial rights again.  This delay is directly attributable to Petitioner.

The Court has not been able to determine when the decision was made to consolidate these cases for trial, but it does know that Petitioner's counsel moved for another continuance in May, 1995, "until the next available Trial date," listing all three case numbers on the motion.  Doc. 49, Ex. C.  Unlike Petitioner's motion for speedy trial, there is nothing in the motion to suggest that he was not seeking a continuance of all three cases.

Though the Court does not have a clear idea of the course of proceedings after that time, it appears that at some point, Petitioner once again began representing himself, or at the very least, began filing *pro se* motions in state court.  Doc. 88, Ex. 3a-b & 52.  This would certainly have complicated the proceedings, and again, would be a delay attributable to Petitioner's conduct.  While the Court  accepts Petitioner's assertion that he did not receive the FDLE test results until after he made his *pro se* demand for it in August, 1995, the Court does not understand how the failure to receive the report in February, 1995, as opposed to August, 1995, is of any significance, when trial did not occur for another six months, and there is nothing in the final report with any relevance to Petitioner's argument that the "State shifted date of shop incident during trial, " *id*. at 10; *see also id*. at Ex. 14a-c, which is the only prejudice that he alleges he suffered.

On August 21, 1995, trial was set for October 23, 1995.  *Id*. at Ex. 52.  Again, the

Court does not have a clear idea of the course of proceedings after that point, but a delay

between October, 1995, and February, 1996, is not inordinate, and Petitioner has not

come forward with anything to show that the delay is attributable to the State's "intention

to fraudulently gain advantage" over Petitioner.  *Id*. at 11.

In sum, while the delay before trial was presumptively prejudicial, the other

*Barker* factors do not weigh against the State and Petitioner has not shown actual

prejudice to his defense.  The claim is without merit.

> VII.   Counsel was ineffective for failing to investigate and move for in camera
> inspection of psychologist's records and to subpoena psychologist and
> emergency room physician for trial.

This claim was exhaustively considered by the state post-conviction court, Doc.

49, Ex. V & Y, and thus, the state court ruling is entitled to deference unless it resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly

established Supreme Court law or resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.  28 U.S.C. § 2254(d).  Both the original and the supplemental rulings

are quite detailed and well reasoned and are not contrary to or an unreasonable

application of *Strickland*.  Petitioner is therefore not entitled to relief on this claim.

> VIII.   Counsel was ineffective for failing to request accurate description of
> vagina .

This claim was likewise exhaustively considered by the post-conviction court,

Doc. 49, Ex. V & Y, and after careful consideration, the Court finds that the state court's

decision is neither contrary to nor an unreasonable application of clearly established

Supreme Court law.  It also should be denied.

> IX.    Counsel was ineffective for failing to request a competency hearing on
> victim.

Again, the state court thoroughly considered this issue and found counsel not to be

ineffective in any way with regard to his handling of the victim and her competency or her

understanding of the obligation to tell the truth.  Doc. 49, Ex. V & Y.  Petitioner confuses

competency with consistency, and while the victim's testimony was less than clear at

times and oftentimes contradictory, this does not equate with her ability to testify, and he

points to nothing else to suggest that the state court's decision is not entitled to deference.

This claim should also be denied, as the state court decision is not contrary to or

unreasonable application of Supreme Court law or based on an unreasonable

determination of the facts.

> X.    Counsel was ineffective for failing to "support or object to denial of
> impeaching photographs based on perception" and for failing to "measure
> witness, prepare site with steps and measurements to duplicate witness's
> view, or inform jurors reason why view was important."

This is yet another claim that was presented to the state court and thoroughly

considered in that forum, Doc. 49, Ex. V & Y, and again, there is nothing about the

decision which is contrary to or an unreasonable application of Supreme Court precedent

or shows an unreasonable determination of the facts.  This claim should be denied.

> XI.    Trial court erred in denying Petitioner evidentiary hearing "to correct
> record at resentencing without ruling on merits."

Petitioner's claim that the trial court erred when it denied him an evidentiary

hearing regarding the alleged alteration of the trial transcript--a claim which has never been framed as a violation of federal law-- was considered by the state court and rejected. Doc. 49, Ex. V.  Despite Petitioner's lengthy recitation of alleged inaccuracies and omissions in the trial record, Doc. 88 at 23-38,[12] the claim presented in an error of state law which is not cognizable in federal court.  Even now, he does not present an issue of federal law, and the mere recitation of a few federal cases does not convert this into a matter appropriate for habeas review.  It should be denied as failing to state a federal claim.

XII.   The trial court erred "in convicting of attempted sexual battery where there is no evidence on record that [Petitioner] intended or attempted to put anything into [the victim's] vagina during shop bookroom incident."

In Petitioner's twelfth claim for relief, he maintains that there was insufficient evidence to establish an attempted sexual battery involving the book room incident.  At most, according to him, "the evidence adduced supports only a lewd act."

This is plainly an issue which should have been raised on direct appeal.  Petitioner admits that it was not raised at that time "due to lack of training in legal field."

The claim was not properly exhausted, and though technically exhausted, he has not shown cause for his failure to raise it on direct appeal, *see Henderson*, 353 F.3d at 892, his lack of legal training being insufficient the definition of cause, and thus, the

---

[12]Once again, Petitioner directs the Court to his proposed second amended petition where the "alterations are fully detailed."  Doc. 88 at 23.  In this Court's attempts to be thorough and to err on the side of caution, it has reviewed the claims as presented in the proposed second amended petition and is of the opinion that it offers nothing beyond what he has detailed in his reply which should be considered by this Court.

question of prejudice does not arise.  While the Court may allow a procedurally defaulted claim to proceed even without a showing of cause or prejudice to correct a fundamental miscarriage of justice, to meet this criteria, Petitioner must show this is an "extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  *Id.*

The constitutional issue which would be implicated that guaranteed by the Fourteenth Amendment "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof–defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).  The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319, or phrased slightly differently, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Id.* at 320.

The Court has reviewed the trial transcript, and the record fully supports a conviction for attempted sexual battery.  "Sexual battery" is defined in Florida includes "vaginal penetration by, or union with, the sexual organ of another or the...vaginal penetration of another by any other object...."  Fla. Stat. Ann. § 794.011(h).  An "attempt" to commit a crime "involves an incompleted act as distinguished from a completed act necessary for the crime."  *L.J. v. State*, 421 So.2d 198, 198 (Fla. Dist. Ct. App. 1982).  It involves "two essential elements:  specific intent to commit the crime and a separate overt, ineffectual act done towards it commission."  *Id.*  "The intent and the act must be such that

they would have resulted, except for the interference of some cause preventing the

carrying out of the intent, in the completed commission of the crime." *Id*. at 198-99.

At Petitioner's trial, the victim testified that while she was in the shop/book room,

Petitioner touched her breast and her vagina and that he stopped when her brother came

into the room.  Doc. 49, Ex. D at 247-51.  Though he did not, according to the victim,

digitally penetrate her, when the evidence is taken in the light most favorable to the State,

it is clear that a rational trier of fact could easily have found the essential elements of the

crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Thus, as there was no fundamental miscarriage of justice in convicting Petitioner

of attempted sexual battery, this claim should be denied.

XIII.   Counsel was ineffective for refusing to impeach arresting officers who
        "committed perjury."[13]

Petitioner candidly admits that this claim was not presented in state court "due to

theft of legal documents by Gulf C.I. prison officials."  Doc. 46 at 8f.  Respondents agree

that the claim was not properly exhaust but that it is technically exhausted because

Petitioner has no recourse in state court.  According to Respondent, even if Petitioner has

shown cause for the failure to assert the claim in state court, he cannot show prejudice.

The Court will assume that Petitioner has shown cause for failing to raise this

claim in state court, and thus, the Court turns to whether Petitioner can establish prejudice,

---

[13]Petitioner again has directed the Court to his proposed second amended petition since, in his view, the "ground will not be judged on its merits unless the second amendment is adopted by the Court," Doc. 88 at 51, and again the Court has, in an abundance of caution, examined the proposed pleading.  As will be discussed *infra*, this ground is being fully judged on its merits, and the Court's review of the proposed petition did not yield anything to alter the final decision.

i.e., "that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson*, 353 F.3d at 892.

Having carefully considered the matter, the Court finds that there is not a reasonable probability that the result of Petitioner's trial would have been different if counsel had impeached the arresting officers as he wanted. According to Petitioner, one of the arresting deputies "stated on deposition he did not know Kever had not signed his full name on 'Consent to Search' form before search of residence. The time on form proves [he] lied under oath." Doc. 46 at 8f. In his reply, Petitioner more fully explains the sequence of events leading up to the search of his premises:

> The impeachment value of the consent form is the time written in. On the seventh page of the police report, it states at 13:22 deputies asked Kever for consent to search his residence. Kever agreed. Lombard produced a consent form and asked for Kever's signature. Kever told them to list exactly what they are looking for, which Lombard did. He handed the form to Kever who signed a "D" then stopped. After a lengthy argument **Kever returned the form unsigned but allowed the search**. The deputies co-signed and time was noted. It was about 5 or 6 minutes past 13:22.
>
> Deputy Mims swore on deposition that he did not know Kever had not signed his full name until after the search was completed.

Doc. 88 at 48 (emphasis added). He also charges that the time the search lasted was altered. *Id*. at 49-50.

Petitioner candidly admits that he "allowed the search" even though he did not fully execute the consent form. Therefore, it is absolutely immaterial whether he actually signed the form since the officers had all the consent they needed when Petitioner "allowed the search." Assuming arguendo that the officer did in fact lie regarding his knowledge about the missing signature, it was counsel's decision whether the

impeachment value of the lie was material in light of Petitioner's verbal consent to search. This is absolutely the type of strategic decision that counsel is allowed to make and which will not be second-guessed unless it is unreasonable.  In this Court's opinion, Petitioner cannot show that no reasonable counsel would have foregone this opportunity for impeachment when the value of such impeachment was negligible at best.  As to the alleged time alteration, Petitioner has not explained its significance, and the Court does not on its own discern how an alteration regarding the length of the search at Petitioner's residence is significant.

With regard to the other arresting officer, Petitioner maintains that he "was caught perjuring while with Broward Sheriffs and asked to resign."  Doc. 46 at 8f.  Petitioner asked counsel to obtain the officer's work records.  *Id*.  Though counsel "volunteered to order records," he later told Petitioner "he could not get them, and didn't really need them."  *Id*.  Even if Petitioner's accusations are true, i.e., "Deputy Lombard had been asked to resign after he had been caught committing perjury while employed at Broward County Sheriffs Department," and that counsel refused to impeach the deputy on this point, Doc. 88 at 40, Petitioner does not enlighten the Court as to how impeaching the deputy on this matter was important.  There is no claim by Petitioner that the deputy manufactured evidence against him or lied about the results of the search.  Again, this is the kind of decision which is fully within counsel's purview to make and will be upheld unless it was unreasonable.  Here, the Court cannot determine how counsel's refusal to question the officer about lies he had made in his official capacity in the past was unreasonable, or, even if it was, how counsel's failure in that regard would have altered

the outcome of Petitioner's criminal case.

Furthermore, even if the Court were to assume that counsel rendered ineffective assistance with regard to his failure to impeach the officers, the evidence at trial was such that this case is not that "extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. Therefore, Petitioner is not entitled to relief on this claim.

> XIV. The trial court violated Petitioner's due process rights by citing "patently false evidence in denial of 3.850 motion and has refused to correct known errors in trial record."

In this claim, Petitioner charges that "[j]udicial employees have altered the record removing misconduct and harmful error." Doc. 46 at 8g. More specifically, Petitioner claims that the state clerk of court failed to forward to the post-conviction court all of his supporting exhibits and "refused to provide case history documenting aborted jury trial on 2-16-95 in case 94-80." *Id.* In his reply, he elaborates, arguing that the post-conviction court denied his Rule 3.850 motion based on "false evidence," that it "blatantly ignored rule mandating record must refute grounds, and that there "has been no fair and just review of Kever's claim that trial and appeal [were] tainted."[14] Doc. 88 at 52-54.

Although Petitioner states that this is a "new ground," Respondent does not argue about Petitioner's failure to exhaust this claim but maintains instead that it is a claim

---

[14]As with some of his other claims, Petitioner has directed the Court's attention to the proposed second amended petition which "delivers a better understanding of the facts and supporting evidence...." Doc. 88 at 52. Again, the Court has proceeded cautiously and reviewed the proposed amendment even though it is not properly before the Court for review and can confidently say there is nothing in it which substantively alters this final claim for relief.

which is not cognizable on habeas review.  Doc. 48 at 64.

Even in a habeas case, this Court does not sit as a super appellate court to review state court decisions with which a petitioner does not agree.  That is essentially what Petitioner asks this Court to do since, according to him, the post-conviction court "denied relief relying on...false evidence," a claim which he supports by reference to seven instances in the court's opinions that he maintains are misstatements of the record or the law or are uncorroborated by the record.  Doc. 88 at 52-53.  Each of these allegations, in one form or another, was indeed presented to the appellate court on appeal from the denial of post-conviction relief, and thus, to the extent that Petitioner has presented some kind of due process claim, which the Court assumes only for the sake of argument, this Court can only examine the appellate court's decision with the deference mandated by § 2254(d).  With that in mind, the Court cannot say that the state court decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This claim should therefore be denied.

## CONCLUSION

Having carefully considered the matter, the Court respectfully recommends that the amended petition for writ of habeas corpus, Doc. 46, be **DENIED**, and this cause  be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this *4th* day of October, 2006.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.